REFINING, Inc., v. SHARPLES SPECIALTY CO.

No. 1186.

District Court, D. Delaware.

Dec. 9, 1937.

Marvel, Morford, Ward & Logan, of Wilmington, Del., Thomas G. Haight (of Wall, Haight, Carey & Hartpence), of Jersey City, N. J., and Charles M. Thomas (of Bacon & Thomas), of Washington, D. C., for plaintiff.

Hugh M. Morris, of Wilmington, Del., and Maurice A. Crews, of Philadelphia, Pa., for defendant.

NIELDS, District Judge.

Motion to dismiss bill of complaint upon the grounds (1) that the facts averred in the bill are insufficient to constitute a valid cause of action in equity; and (2) that the facts averred in the bill reveal no valid cause of action which plaintiff may assert against defendant.

The bill of complaint alleges, inter alia, that Benjamin Clayton, Walter B. Kerrick, and Henry M. Stadt, plaintiff's assignors, were the first, original, and joint inventors of a process for refining vegetable and animal oils upon which they filed an application (serial No. 534,533) for letters patent on May 2, 1931; on April 22, 1931, Stadt and Kerrick had assigned their entire right, title, and interest in the application to Clayton, who installed an apparatus practicing the aforesaid process, one element of which was a centrifuging machine manufactured by, and purchased from, the defendant.

The bill further alleges that defendant requested permission to inspect Clayton's apparatus, and this permission was granted upon its express agreement that "any information so obtained would be held in confidence, secrecy and trust, and would not be used by defendant or its representative to the detriment, injury, harm, disadvantage or embarrassment of the said Clayton or those associated with him"; that subsequent to and because of the making of this agreement, defendant's representatives, including Edward M. James, its chemist, were given free access to Clayton's plant where the process was practiced; that about October 6, 1931, defendant, with knowledge of the details of the Clayton invention, in breach of its agreement of confidence and trust and for the purpose of delaying the issuance of a patent on Clayton's application, caused an application (serial No. 567,220) for a patent to be filed in the name of Edward M. James on the invention of the Clayton, Stadt, and Kerrick application, thereby causing an interference to be declared which

512

was decided in plaintiff's favor by the Examiner of Interferences whose decision was affirmed by the Board of Appeals, the latter decision having been sustained by the Court of Customs and Patent Appeals; that early in 1932, defendant erected a demonstration plant, the equivalent of Clayton's, and demonstrated plaintiff's process to refiners in violation of its express confidential and trust relationship, and induced some refiners to purchase apparatus designed to practice the process; as a result of this action on defendant's part, and its representation that the plaintiff did not invent the invention in suit, plaintiff has been unable to license refiners and obtain royalties and defendant has made profits in excess of $350,000, to which plaintiff is entitled; that defendant is now continuing and threatens to continue such unlawful, inequitable, and unjust acts to plaintiff's irreparable damage and injury; that in further breach of its express agreement of trust, confidence, and secrecy, defendant obtained an English patent which likewise deprives plaintiff of royalties to which it is entitled, and has filed applications for patents in other foreign countries.

It is further alleged that by an assignment dated January 15, 1934, there was transferred to plaintiff, Refining, Inc., the entire right, title, and interest in and to application for patent (serial No. 534,533) and the invention disclosed therein, with directions that the patent issued upon the application be granted to plaintiff; that by a separate assignment dated February 10, 1936, Kerrick, Stadt, and Clayton assigned to plaintiff all their beneficial interest in, to, and under any and all agreements, understandings, contracts, and choses in action arising out of the invention disclosed in the aforesaid application (serial No. 534,533), or in any work done in connection with it or damages suffered by any or all of them or benefits derived by defendant by reason of its unlawful acts as hereinbefore set forth.

The bill prays, inter alia, that a decree be entered adjudging that defendant occupied a trust and confidential relationship toward plaintiff or its predecessors in interest in respect to the process disclosed in the application for a patent of Kerrick, Stadt, and Clayton; that plaintiff is entitled to recover damages and profits from defendant as a result of its unlawful manufacture and sale of apparatus designed to practice its invention; that defendant be enjoined from inducing refiners to practice plaintiff's process and from selling equipment to be used for that purpose; and that defendant be required to assign to plaintiff all United States and foreign applications for patents or patents disclosing plaintiff's process or its substantial equivalent.

In brief, the bill charges that before a patent had issued to the three joint inventors, and while their application therefor was pending, they were induced by defendant to impart to defendant their secret process, the subject of their application for patent; that they shared knowledge of their process with defendant upon the express agreement on the part of defendant that it would not abuse this confidence; that defendant betrayed this confidence and broke its express agreement. The bill expressly charges that early in 1932, defendant erected a demonstration plant, the equivalent of Clayton's, and demonstrated plaintiff's process to refiners in violation of its express confidential and trust relationship, and induced some inventors to purchase apparatus designed to practice the process. As a result of this action on defendant's part, and its representation that the plaintiff did not invent the invention in suit, plaintiff has been unable to license refiners and obtain royalties and defendant has made profits in excess of $350,000 to which plaintiff is entitled; and that defendant is now continuing and threatens to continue its unlawful, inequitable, and unjust acts to plaintiff's irreparable damage and injury. This conduct with which defendant is charged is fraudulent conduct; call it a breach of trust or what you please.

Defendant relies upon the well-recognized principle that a bare right to sue in equity for fraud separate and distinct from a property right is not assignable as being against public policy and savoring of maintenance. Where the right to sue for fraud is incidental to a subsisting substantial property right which has been assigned and which is itself intrinsically susceptible of legal enforcement, such right to sue for or set up the fraud is assignable and passes by assignment as an incident of the assignment of the property right.

There is a strong analogy between the assignment of a right to sue for fraud before a patent issues and a right to sue for infringement after the grant of the patent. It is clear that the mere assignment of a patent confers no right to sue for past in-

fringement. Yet it is settled law that the assignment of a patent, together with the assignment of the right to sue for past infringements, gives the assignee the right to sue for such past infringements. Crown Co. v. Nye Tool Works, 261 U.S. 24, 43, 43 S.Ct. 254, 259, 67 L.Ed. 516. "Ordinarily, a cause of action in tort is not assignable. This rule, however, has reference to strictly personal torts, but rights of action for damages, and claims growing out of and adhering to property, will pass by assignment." Hamilton v. Rollins, 11 Fed.Cas. p. 364, 365, No. 5,988, 5 Dill. 495.

Under the allegations of the bill of complaint the assignors were owners of a patent application which is itself property. They assigned the application to plaintiff. They also assigned to plaintiff, as alleged, "the damages suffered or benefits derived by defendant because of its unlawful acts as hereinbefore set forth." The right to sue for such damages passed with the application to plaintiff. It is entirely appropriate that the right to sue for such fraud should not be lost, but should pass to the owners of the application for patent to whom in fact the patent will issue.

The motion to dismiss must be denied.